## TERRELL et al. v. KNIGHTS OF THE KU KLUX KLAN et al.

It appearing from the allegations and the prayers that the plaintiffs were not entitled to the relief sought, the general demurrer to the petition was properly sustained.

No. 3179. FEBRUARY 20, 1923. REHEARING DENIED MARCH 1, 1923.

Equitable petition. Before Judge George L. Bell. Fulton superior court. March 7, 1922.

Harry B. Terrell, Lloyd P. Hooper, F. W. Atkin, A. J. Padon, and one hundred and seventy other named parties plaintiff, alleging themselves to be members of the order of the Knights of the Ku Klux Klan, brought their petition against the Knights of the Ku Klux Klan, a corporation, Edward Young Clarke, and Mrs. M. E. Tyler. In the petition it is alleged, in substance, that the Knights of the Ku Klux Klan was incorporated by an order of the superior court of Fulton County, Georgia; that it is purely a benevolent and eleemosynary society, having no capital stock, for the purpose of conducting a patriotic, secret, social, benevolent order; that previous to its incorporation the order had for some time been a voluntary unincorporated society or association. For convenience of reference the order is herein referred to as the "society" or "order." The petition further alleges, that the

defendant had organized between five and six hundred sub-ordinate branches, and had a membership of about one hundred thousand persons, the subordinate branches being scattered throughout the United States; that the society receives, by its laws, only native-born, white, Gentile, male American citizens, of good morals and character; that the defendant Clark holds an office corresponding to that of vice-president and general super-intendent of the organization department of the corporation, hav-ing been made such on June 7, 1920, by a written contract of the corporation; that Mrs. Tyler, the remaining defendant, is the head of the woman's department, or auxiliary corporation; that all persons desiring to become members of the order must make application therefor, and, in lieu of what is commonly known as the initiation fee of fraternal orders, make a donation to the prop-agation fund of the society; that petitioners became members after having made the necessary application and having donated ten dollars to the propagation fund; that petitioners are all mem-bers in good standing in said society, and no question has ever been raised as to the good standing of petitioners, with the ex-ception of the petitioners Terrell, Hooper, Atkin, and Padon, and as to them the defendants contend they have been "banished," that is to say, suspended from their rights and privileges in the order, and that charges have been preferred against Upchurch (one of petitioners), which affect his good standing; that pub-lished announcement has been made through the newspapers and otherwise that Terrell, Hooper, Atkin, and Padon have been expelled from the order; that no written charges have ever been preferred by the order against these four, nor have they ever been served with charges, nor have they been tried; that the laws of the order or society make ample provision for the prefer-ment of charges against its members, service of the same, de-fense by the member under charge, and a trial thereon, and after conviction, if had, sentence and appeal to the supreme authorities of said order.

It is further alleged that the order, with the beginning of the fall of 1920 and for about twelve months afterwards, grew in membership with great rapidity until it had organized more than five hundred subordinate branches, with a membership of one hundred thousand, in the United States; that during the month

of September 1921, certain newspapers made attacks upon the character of Clarke and Mrs. Tyler, and following these attacks the membership of the order began to grow lukewarm and indifferent, some of them retiring from the order, and at the time of the filing of the petition the order is taking in very few new members; that apparently no serious effort was made by Clarke and Mrs. Tyler, or the supreme authorities of the order, to repel the attacks, and this resulted in injury to the growth of the order to such an extent that the membership insisted that all relations between the order and Clarke and Mrs. Tyler be severed; that in view of the insistence of the membership, Terrell, who was chief organizer of a territory embracing several States, in November, 1921, met with Hooper, who was organizer of another district or territory, and with Atkin and Padon, who were also organizers in still other States and territories, and these four learned that the general feeling of dissatisfaction existed among the members throughout their territory, and they thereupon reached the conclusion to go to Atlanta, Ga., to lay the matter before William Simmons, the Imperial Wizard, or president of the order; that they explained the situation to him, in the presence of Paul Etheridge, general counsel of the order, and Simmons immediately convened certain members of the supreme executive committee, and the situation was explained to them; that Simmons said thereupon that in his opinion " Clarke should be expelled immediately from the order, for the good of the same, and that within seventy-two hours from that hour either himself or Clarke would be out of the order, provided additional charges made by Terrell, Hooper, Atkin, and Padon were proven to be true," that thereafter the four named organizers filed with Simmons and the supreme executive committee written specifications of charges against Clarke, and prayed that a time and place be named where those making the charges might appear and prove the charges, but no opportunity was ever offered them to make the proof, but instead they were " shortly thereafter notified that their official connection with the order had been severed by said Clarke, and shortly later thereafter noted in the newspapers the statements from Simmons and said Clarke that they, Terrell, Hooper, Atkin, and Padon, had been banished or expelled from said order or society." It is alleged that on account of the " manner of the

handling of the charges " made against Clarke and Mrs. Tyler, by the supreme authorities of the order, and the treatment accorded to Terrell, Hooper, Atkin, and Padon, they fear that if and when their names become known as plaintiffs in this petition they will be summarily banished from the society, for the purpose, if possible, of placing them in such a position that they will be unable to become complainants in court or elsewhere unless they are protected by order of the court; and that one Love, who was a predecessor in office of Terrell, also made efforts to demonstrate to Clarke the injurious effect upon the order of retaining Mrs. Tyler.

There are allegations of gross immorality and misconduct on the part of Mrs. Tyler. It is charged that Clarke's character also is bad; that M. B. Forrest, a member of the supreme executive committee, has said that he intended to stand by Clarke, regardless of the truth or falsity of the charges of immorality; that Clarke is using a part of the funds coming into his hands to promote business enterprises in which he is interested; that Mrs. Tyler is in control of the propaganda or organization department; that for the propagation of the order the defendant corporation, in the first of the year 1920, issued bonds in the denomination of one hundred dollars, which were sold to its members who now hold the same to the amount of about $25,000; that the order has purchased a house and lot for headquarters, paying ten thousand dollars in cash, and on account of which purchase there is a balance of $25,000 due; that the defendant has invested twenty or thirty thousand dollars in a college called Lanier University, upon which there now exist liabilities of many thousands of dollars, which must be met in addition to paying the running expenses of the institution, if it is to continue as a going concern, for the reason that its patronage and income are small; that Clarke claims, in contravention of his contract, a balance of some thirty thousand dollars on account of expenditures made, as he contends, on behalf of the order. It is alleged, upon information and belief, that the corporation, in contravention of its contract with Clarke, has paid him five thousand dollars to reimburse him in part for advertising after said expenditure had been made without previous authorization of the corporation; that the order has invested three thousand dollars

towards the purchase of a house and lot for the president of the corporation; that Clarke and Mrs. Tyler are interested in the manufacturing of costumes which cost about two dollars, and on which there is a profit of fifty cents; that they are having these made by one Davis, who is a mere dummy; that the order is departing from its original purposes and being perverted; that Clarke and Mrs. Tyler virtually control the said society and its assets; that when the lot and building for headquarters were purchased Clarke took title to the same in his own name; that when the home for the president was purchased he took the title in the name of trustees appointed by him, although the same was represented as a gift to the president; that he secured the investment of certain moneys of the society in National Motor Specialty Corporation, organized and promoted by him; that he procured the discharge of all officers of said society who made any real or earnest protest against his and Mrs. Tyler's control of and connection with the society; that " the said defendant is controlling the expenditure of the funds of the order in defense of Clarke and Mrs. Tyler, on the pretense that the attack on them is an attack upon the order." It is contended, that, as members of the order and as donors to the " propagation fund," petitioners have an interest therein to the extent of seeing that the same is lawfully applied; and for this reason they bring this action on behalf of themselves and all other members of the order, and pray that members of the order who so desire may be permitted to become parties plaintiff to the petition. In addition to those originally named as petitioners a large number did intervene as plaintiffs, adopting the allegations of the petition and the prayers. When the case came on for a hearing general demurrers were filed by the defendants, and after argument were sustained, and the petitioners excepted. ·

   *William H. Terrell* and *Harry B. Terrell,* for plaintiffs.

   *Westmoreland & Smith, Etheridge, Sams & Etheridge,* and *B. H. Sullivan,* for defendants.

   Beck, P. J. We are of the opinion that the court did not err in sustaining the general demurrer and dismissing the petition. That is the conclusion reached after considering each of the prayers of the petition and the relief sought. Taking up these prayers seriatim, they are as follows: After the prayer for process,

the first prayer is that the defendants and each of them, and all the officers, agents, and subordinate branches of the defendant corporation be restrained and enjoined from banishing, suspending, expelling, preferring charges against, or trying any of the petitioners on any charge whatever. It is manifest that petitioners were not entitled to an injunction or to the relief here sought. Under the charter, and the by-laws passed under the powers there granted, the order or society of the Knights of the Ku Klux Klan could make provisions for the preferment of charges against its members, for service of the same, for the defense of the member under trial, and then, if conviction were had, provision is made for an appeal to the supreme authorities of the order. It is not alleged that the complainants are about to be tried and expelled. In one paragraph of the petition it is urged that they were informed that they had been expelled or banished; but there is no allegation in the petition that as a matter of fact they had been banished or expelled. Some officer of the order had said that four of the members were expelled or banished, and they had seen reports to this effect in the newspapers. These allegations do not show such action upon the part of the order as authorized the issuance of an injunction; and the brief of plaintiffs in error distinctly states that they do not insist that any of them have been expelled. It is stated in that brief that petitioners deny that "they have been either banished, suspended, or expelled, and insist that they are yet members of defendant society; nor is this bill brought for the purpose of invoking the aid of the court in restoring to membership any of the plaintiffs in the original petition;" and inasmuch as the order has, by its charter and by-laws, the right to prefer charges and to try the members, the court below could not properly have enjoined them from proceeding with the trial; for, in the first place, if the finding of the body trying them had been adverse, the members expelled or threatened with expulsion would have had the right to appeal to the supreme authority of the order. If they had been denied their right of appeal, or if the trial had not been in conformity to the by-laws and charter of the corporation they might, by application for injunction, have prevented the judgment of expulsion from being enforced, by an appeal to the court.

The next prayer is for the appointment of a receiver. The

facts stated in the petition do not authorize the appointment of a receiver. What could have been effected by the appointment of a receiver? The plaintiffs have no financial interest in the property bought for a home for the president, nor in the building purchased for the headquarters for the order. The moneys paid in, and with which these buildings must have been purchased, were donations made by those seeking to become members of the order. A very small sum is charged as annual dues; but there is no allegation in the petition to show that all of the annual dues are not consumed in the expenses of the order. We do not base the ruling that the plaintiffs were not entitled to a receiver upon the ground merely that they had no financial interest which would be affected by official acts complained of, but on the ground that it does not appear what good could in any way be accomplished for the order by the appointment of a receiver, nor the purpose that would be subserved by such an appointment. The work of organizing and propagation seems, from the allegation of the petition, to have been one of the most important concerns of the order; and there is nothing to show that the purchase of expensive headquarters was not essential to the propagation, to organization, and to the maintenance of the society. If the issuance of bonds was an act ultra vires, it may be that the collection of the bonds can be enjoined; though it is not necessary to discuss that or to rule upon it, nor is any such injunction sought.

Next in order is the prayer that the said defendants (meaning, we assume, the two individuals joined as defendants) be required to cancel their alleged claims of indebtedness of said corporation to them, and that they be required to refund to said corporation the five thousand dollars paid to them on advertising account, and other moneys alleged to have been illegally expended by them. A court of equity could not properly entertain a petition to require parties to cancel their claim of indebtedness. If, after proper efforts upon the part of members of the corporation to have the governing and controlling authorities contest claims against the order which are not well founded, such authorities refuse to take necessary steps to defeat such claims, or collude with those holding the claims, then members might maintain a suit to protect the order against the enforcement of

such claims; but until that is shown, a court of equity will not interfere, even if, under any circumstances, it would order one claiming to be a creditor to cancel his claim. So far as that part of the petition under consideration, which seeks an order from the court requiring the two individuals joined as defendants to refund to the corporation the five thousand dollars paid to them on advertising account, and other moneys alleged to have been illegally expended by them, is concerned, it does not appear that the plaintiffs in this case have such an interest in the fund as would entitle them to this relief. If the corporation had paid to the defendants Clarke and Tyler funds to which they were not entitled, or which they had obtained by fraud, it might be that in a suit framed for that purpose the authorities of the order might be required to sue for its recovery; or possibly members of the corporation, upon a showing that there was collusion between the executive authorities of the order and individuals who had received funds that were improperly paid to them, might maintain a suit to recover judgment against those who had received such funds, for the benefit of the order itself; though that question is not directly presented here and we do not decide it. We go no further than to decide that the prayer requiring cancellation of claims and a refunding of moneys paid could not be granted under the allegations of this petition.

The fourth and fifth prayers are that Clarke and Tyler be enjoined and restrained from further connection and control of the society and its affairs, and that they be removed from all official connection with or control over the order. A court of equity would not adopt the radical measures here invoked, in advance of some action by the society, in view of the fact that the society has ample machinery to prefer charges and to try charges against any of its members or officials. Before petitioners will be entitled to the remedy sought, it is essential that it should appear that they have exhausted their remedies within the society; and that those in control refuse to put in motion, upon charges properly made, the machinery appropriate to effect the expulsion of Clarke and Mrs. Tyler, or their removal from offices. It is true that charges were preferred by Terrell, Hooper, Atkin, and Padon, and it is inferable that those charges have not been acted upon; but the mere fact that they have not been

acted upon does not sufficiently show that they will not be acted upon. These charges were preferred late in November, and the petition was filed in December, about thirty days later. There is no other allegation in the petition to show that such a period of time had elapsed between the filing of the charges and the time of bringing this suit as would disclose an intention upon the part of the proper authorities in the order to connive at acts of misconduct upon the part of Clarke or Mrs. Tyler, or to leave the charges pending indefinitely. The order has some five hundred subordinate lodges; presumably there is a large amount of official business to be attended to; and it is not shown how often the governing authorities meet, or that regular meetings have passed without notice being taken of the charges pending, or anything else to show that the charges will be ignored, except the declaration of two or three persons who are officials of the order.

The only prayer of the petition not specially noticed is the prayer for general relief; and nothing has been suggested to us in the way of general relief that would be germane to the special prayers that we have not already considered. It does appear in the bill that large sums have been expended in the purchase of a college or university, and debts incurred in this behalf; but there is no prayer to enjoin the society from proceeding with this enterprise, nor is it indicated that such an institution might not be appropriate to the propagation of the principles underlying the society in question. We therefore conclude that the court properly sustained the general demurrer; and the judgment dismissing the case is　　　*Affirmed. All the Justices concur.*